# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1322

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Kashaun L. Lockett, also known as | * | |
| Gangsta, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 19, 2009
Filed: April 14, 2010

_____

Before WOLLMAN, JOHN R. GIBSON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Kashaun L. Lockett appeals his conviction, following a jury trial, for conspiracy to distribute and to possess with intent to distribute 50 grams or more of a mixture containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Following his conviction, the district court[1] sentenced Lockett to 120 months imprisonment. On appeal, Lockett challenges the sufficiency of the evidence presented by the government in support of his conviction, the district court's denial

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

of Lockett's mistrial motion premised on a claim that the government's questioning of one witness was improper and highly prejudicial, and the district court's denial of his Batson[2] challenge to the government's use of a peremptory strike against a juror. We affirm.

I.

Because Lockett challenges the sufficiency of the evidence, "[w]e recite the facts in the light most favorable to the jury's verdict." United States v. Stevens, 439 F.3d 983, 986 (8th Cir. 2006). At trial, three witnesses—Elizabeth Leader, Heather Krause, and Kenneth Jones—testified about their relationships with Lockett, Lockett's drug activities, and Lockett's connection to Percy Grant, who was indicted along with Lockett. As Lockett's appeal focuses on the testimony of these three witnesses, we discuss the substance of their testimony.

Leader testified that she was involved in a romantic relationship with Grant beginning in April 2007. According to Leader, Grant frequently sold crack cocaine at the Royal Oaks Apartments in Des Moines, Iowa. Lockett often visited Grant and Leader in Des Moines, and on three or four occasions, Lockett joined Grant in selling crack cocaine at the Royal Oaks Apartments.

Krause testified that she sold drugs for Grant and acted as a "go-between," setting up drug transactions for Grant. The relationship between Krause and Grant started as a business relationship but developed into a friendship and was "heading down [the] road" to a romantic relationship. Grant introduced Lockett to Krause. In November 2007, Krause drove around Des Moines with Grant and Lockett, selling crack cocaine. At some point, they ran out of crack cocaine and decided to travel to

---

[2]Batson v. Kentucky, 476 U.S. 79, 96-98 (1986) (providing a three-part analysis for determining whether a party impermissibly struck a potential juror on account of race).

Omaha for more. Krause and Grant dropped Lockett off at a house in Omaha where Lockett believed he could obtain crack cocaine. Several minutes later when Krause and Grant returned to pick up Lockett, Lockett indicated he was successful in obtaining the additional crack cocaine. On November 29, 2007, Krause, Grant, and Lockett left a Des Moines motel to pick up Grant's father. Before leaving, Lockett retrieved a bag of crack cocaine that he had hidden near a tree at the motel. Lockett handed the crack cocaine to Grant. Grant gave it to Krause and told her to put it inside her bra. Following a traffic stop and Krause's arrest for marijuana possession, Krause told police that she was concealing crack cocaine on her person and that Lockett had handed the crack cocaine to her. In her testimony, Krause admitted that she lied to police at the time of her arrest to protect Grant.

Jones testified that, in March 2008, he moved back to Omaha from Las Vegas to be closer to family. After moving back to Omaha, Grant, who is Jones's cousin, contacted Jones about purchasing crack cocaine. Lockett accompanied Grant to a meeting that Grant had arranged with Jones. Both Grant and Lockett informed Jones that they had been successful in selling crack cocaine in the Des Moines area. At that first meeting, Jones sold one ounce of crack cocaine to Grant and one-half of an ounce of crack cocaine to Lockett. In subsequent transactions, Jones sold to Lockett an additional two ounces of crack cocaine, a quarter of a pound of marijuana, and two or three ecstacy pills.

While questioning Jones at Lockett's trial, the government asked, "Do you have any concerns regarding your own personal well-being and that of others close to you in connection with your testimony?" (Trial Tr. 394.) Lockett's counsel objected to this question, and the district court sustained the objection. Lockett then moved for a mistrial, arguing the question was improper and warranted a mistrial because it raised a suspicion that threats were made by Lockett to the safety and well-being of the witnesses. The district court agreed that the question was improper but denied the mistrial motion. Instead, the district court told the jury that the question was

improper, ordered it stricken from the record, and directed the jury "to entirely disregard that question or any inference of any kind that [it] might otherwise draw from such a question being asked." (Id. 396.) At the conclusion of the government's case, Lockett moved for a judgment of acquittal, claiming the government failed to present sufficient evidence for conviction. The district court denied this motion. Lockett brings this appeal.

II.

A.

Lockett argues that there was insufficient evidence presented to support his conviction, and therefore the district court should have granted his motion for judgment of acquittal. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003). Under this strict standard, we will reverse only where no reasonable jury could have found the accused guilty beyond a reasonable doubt. United States v. Sanders, 341 F.3d 809, 815 (8th Cir. 2003).

In order to convict a defendant of conspiracy, the government must prove (1) the existence of an agreement to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) the defendant's knowing participation in the agreement. United States v. Johnson, 439 F.3d 947, 954 (8th Cir. 2006). The agreement does not have to be a formal, explicit agreement; a tacit understanding will suffice. Id.

In this case, Lockett argues that the government failed to meet its burden of showing that he knew of the conspiracy or intentionally joined in it. Lockett claims that Leader's testimony merely established that Lockett knew Grant, not that Lockett

was aware of Grant's involvement with drug transactions at the time. As for Krause's testimony, Lockett maintains that, at most, it establishes that Lockett was aware that Grant was selling crack cocaine but did not show Lockett was a member of a conspiracy to distribute crack cocaine with Grant. Finally, Lockett argues no reasonable juror could credit Jones's testimony because of Jones's extensive criminal history and because Jones's motivation for testifying was his hope that he would receive a reduced sentence in exchange for cooperating with the government.

The evidence presented by the government refutes Lockett's claims. Drawing reasonable inferences from Leader's testimony, a reasonable jury could conclude that on multiple occasions, Lockett joined with Grant to sell crack cocaine at the Royal Oaks apartments in Des Moines. Krause's testimony provides additional evidence of the conspiracy. Specifically, Krause testified that she, Grant, and Lockett drove around Des Moines selling crack cocaine, that Lockett acquired additional crack cocaine at a house in Omaha, and that Lockett retrieved a quantity of crack cocaine from where he had hidden it beneath a tree and then gave it to Grant.

Notably, Lockett does not argue that Jones's testimony was insufficient to establish the elements of the drug conspiracy, rather Lockett attacks Jones's credibility as a witness. Jones's testimony clearly demonstrates the existence of the agreement to distribute drugs, Lockett's knowledge of the agreement, and Lockett's participation in the agreement. To the extent Lockett challenges Jones's credibility, we defer to the jury's credibility determination. See United States v. Kenyon, 397 F.3d 1071, 1076 (8th Cir. 2005). Therefore, we reject Lockett's argument that there was insufficient evidence to support his conviction.

B.

Lockett next argues the district court erred in denying his motion for a mistrial based on improper questioning by the government's attorney. It is generally within

the discretion of the district court to decide whether the fairness of a trial has been compromised by prejudicial testimony. United States v. Urick, 431 F.3d 300, 304 (8th Cir. 2005). As such, the district court's decision to deny a motion for a mistrial is reviewed for an abuse of discretion. Id. Admission of a prejudicial statement is normally cured by striking the testimony and instructing the jury to disregard the remark. Id. When the evidence of guilt is substantial, we may find that the allegedly improper testimony was harmless. United States v. Nelson, 984 F.2d 894, 897 (8th Cir. 1993).

We do not question the district court's characterization of the government's question to Jones about whether he feared for his safety in testifying as improper. Having thoroughly reviewed the trial record, however, we find that the corrective actions of the district court—instructing the jury that the government's question was improper, striking the question from the record, and directing the jury to disregard the question and any inference that could be drawn from it—were adequate to cure the prejudicial effect of the question. If residual prejudice survived this curative instruction from the court, that prejudice is harmless when compared to the substantial evidence of Lockett's guilt. See id. Thus, we affirm the denial of the motion for mistrial.

C.

Finally, Lockett contends the district court erred in denying his Batson challenge to the government's use of a peremptory strike against "ST," the sole African-American juror on the venire panel. We review the district court's Batson ruling for clear error. United States v. Bolden, 545 F.3d 609, 614 (8th Cir. 2008), cert. denied, 130 S. Ct. 796 (2009). In conducting this review, we note that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett v. Elem, 514 U.S. 765, 768 (1995).

Courts evaluate <u>Batson</u> challenges under a three-step test. First, the defendant must make a prima facie case that the prosecution's strike was motivated by race; second, the prosecution must offer a race-neutral reason for the strike; and third, taking into account all the evidence, the trial court must find whether or not the prosecutor was motivated by purposeful discrimination.

<u>Kahle v. Leonard</u>, 563 F.3d 736, 739 (8th Cir. 2009) (quotation omitted).

During voir dire, the government asked the prospective jurors if any had philosophical or religious objections to sitting in judgment of another person. ST stated, "I don't feel that it's my right to sit in judgment of another person." (Trial Tr. 41.) After further questioning, ST indicated that, despite her statement, she could be fair and impartial but that jury service "would weigh on me on my conscience." (<u>Id.</u> 42.) The government sought to strike ST for cause, but the district court rejected the request. The government then used its third peremptory strike to remove ST. When Lockett raised his <u>Batson</u> challenge, the government explained that ST's comments demonstrated that it would be difficult for her "to fairly judge the facts and reach a verdict that would be favorable to the United States." (<u>Id.</u> 58.) The district court agreed that the response provided a reasonable, race-neutral basis for the government's use of the peremptory strike.

We agree that the government offered a race-neutral basis for striking juror ST, and Lockett has not shown that the basis was a pretext for purposeful discrimination. Further, the fact that the district court denied the government's motion to strike ST for cause does not necessarily preclude the government from using its peremptory strike on that same juror for the identical reasons so long as those reasons are race-neutral. <u>Cf.</u> <u>White v. Luebbers</u>, 307 F.3d 722, 728 (8th Cir. 2002) (recognizing, by way of example, that a potential juror could be subjected to the government's use of its peremptory strike when that potential juror could not be removed for cause after being

rehabilitated by the defense).  Therefore, we conclude that the district court did not clearly err in denying Lockett's <u>Batson</u> challenge.

III.

Accordingly, we affirm Lockett's conviction.

_____