# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2000

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Dale M. Willis, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 13, 2005
Filed: January 9, 2006

_____

Before LOKEN, Chief Judge, LAY and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Dale Willis pleaded guilty to conspiring to manufacture and distribute crack cocaine in violation of 21 U.S.C. §§ 841 and 846. After an April 2004 sentencing hearing at which the government presented the testimony of five witnesses, the district court[1] found that Willis was responsible for the manufacture and distribution of more than 1.5 kilograms of crack cocaine. The court also imposed a four-level enhancement under U.S.S.G. § 3B1.1(a) because Willis was an organizer or leader of

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

the criminal enterprise. The court sentenced him to 405 months in prison. Willis appeals, arguing that the court erred in calculating drug quantity and in imposing the organizer/leader enhancement. He further argues that these enhancements violated his Sixth Amendment rights, an issue now governed by the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005). We affirm.

At the sentencing hearing, Detective Don Stanze of the Kansas City Police Department testified that a reliable informer, Andre Jones, told the police that Jerrill Green was selling crack cocaine supplied by Dale Willis. Several undercover purchases from Green followed. During the third purchase, Green took the undercover officer to "his boy's house," 2602 Norton, to get the two ounces of crack being sold. Green went inside the house. Willis arrived and entered a short time later. Green then left the house and delivered crack to the undercover buyer. Based on this information, the police obtained a warrant and searched 2602 Norton, finding firearms, marijuana, 370 grams of crack cocaine, more than one kilogram of powder cocaine, and everything needed to cook the powder cocaine into crack.

Andre Jones testified that he bought substantial quantities of crack from Willis and his nephew, Robert White, at 2602 Norton. He bought from Darric Partee in their absence, but Willis and White controlled the house. Jerrill Green testified that Willis and White recruited him to "move some crack." He purchased two to nine ounces of crack at 2602 Norton three or four times a week for thirteen months. Green testified that Willis and White were in charge and that Partee and Brent Jones worked for them. Davell Smalls testified that he saw four to five kilograms of crack at 2602 Norton and purchased up to an ounce daily for six weeks from Willis, White, and Partee.

After hearing this testimony, the district court declined to impose a two-level enhancement for the firearms found at 2602 Norton. The court imposed a four-level enhancement for being an organizer and leader, finding that the conspiracy included at least five persons (Willis, White, Jones, Green, and Partee) and that "based upon

the evidence I have in front of me, Willis controlled White." The court found that the relevant drug quantity was 1.5 kilograms or more of crack, a finding based on the 400 grams found during the warrant search plus 2000 grams, a conservative estimate of the crack purchased by Green from the conspirators.

1. Willis argues that the district court's drug quantity finding was clearly erroneous because less than 500 grams of crack were seized during the warrant search or involved in the undercover purchases, and the self-serving testimony of cooperating conspirators Jones, Green, and Smalls was speculative and unreliable. Under Booker, we continue to review the district court's application of the guidelines and continue to review findings of fact for clear error. See United States v. Mashek, 406 F.3d 1012, 1015-17 (8th Cir. 2005). Under clear error review, we may reverse "only if we have a definite and firm conviction that the District Court was mistaken." United States v. Bahena, 223 F.3d 797, 802 (8th Cir. 2000), cert. denied, 531 U.S. 1181 (2001). Having carefully reviewed the sentencing record, and mindful that the district court's credibility findings are virtually unassailable on appeal, we conclude that ample evidence supports the court's finding that Willis conspired to manufacture and distribute more than 1.5 kilograms of crack. There was no clear error.

2. Willis next argues that the district court clearly erred in imposing the four-level organizer/leader enhancement because the testimony of Jones, Green, and Smalls established that Willis sold to them without controlling their resales. This enhancement is imposed if the defendant was an organizer or leader of a criminal enterprise that involved five or more participants. U.S.S.G. § 3B1.1(a). We broadly interpret the terms "organizer" and "leader," and the defendant need organize or lead only one other participant. See Bahena, 223 F.3d at 804; United States v. McMullen, 86 F.3d 135, 138 (8th Cir. 1996). In a drug conspiracy case, "a defendant must do more than sell for resale" to be found an organizer or leader. United States v. Miller, 91 F.3d 1160, 1164 (8th Cir. 1996). However, it is enough if the defendant assumed organizing or leadership functions such as recruiting others, determining the price or

location of sales, and so forth. See United States v. Jasper, 169 F.3d 1109, 1110 (8th Cir. 1999). Here, Green testified that Willis recruited him to sell crack and that Partee and Brent Jones sold crack for Willis. Green, Smalls, and Andre Jones all testified that Willis bought powder cocaine and cooked it into crack at 2602 Norton for resale on the street, and that everyone at 2602 Norton answered to Willis and White. Based upon this evidence, the district court's finding that Willis was an organizer or leader of a criminal enterprise involving five or more participants was not clearly erroneous.

3. Finally, Willis argues for the first time on appeal that the district court violated his Sixth Amendment rights under Blakely v. Washington, 542 U.S. 296 (2004), by imposing sentencing enhancements neither admitted by Willis nor found by a jury. This issue is governed by the Supreme Court's subsequent decision in Booker. As Willis raised no Sixth Amendment issue in the district court, we review this contention for plain error. See United States v. Pirani, 406 F.3d 543, 549-50 (8th Cir.) (en banc), cert. denied, 126 S. Ct. 266 (2005).

To establish plain error, Willis "must show (1) an error, (2) that is plain, that not only (3) affected his substantial rights, but also (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings." United States v. Gomez, 419 F.3d 835, 838 (8th Cir.), cert. denied, 126 S. Ct. 597 (2005) (quotations omitted). Because the district court treated the guidelines as mandatory, Willis satisfies the first two criteria. To satisfy the third, he must show a "reasonable probability" that the district court would have imposed a more lenient sentence under the now advisory guidelines. Pirani, 406 F.3d at 553. We conclude that Willis has not made this showing. At sentencing, after making a drug quantity it described as "very conservative," the district court denied Willis's motion for a downward departure and sentenced him to 405 months in prison, the top of his guidelines range of 324 to 405 months. The court explained that "there's no question in my mind Mr. Willis is a dangerous person in our community and has caused a lot of suffering." The court noted that Willis was an uncle who had brought young people into the drug trade,

which is "corrosive to the community." He had "kept people out front to do his dirty work to try to prevent being held responsible himself." For these reasons, the court added, "there could have been a basis for an upward departure in this case." These statements provide no reasonable probability that the district court would have sentenced Willis more leniently under an advisory guidelines regime.

The judgment of the district court is affirmed.

_____