# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1520

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Jose Benigno Aguilar, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: November 13, 2007
Filed: January 10, 2008

_____

Before MURPHY, HANSEN, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Jose Benigno Aguilar was convicted by a jury of one count of conspiracy to distribute methamphetamine and one count of aiding and abetting the possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846, and 18 U.S.C. § 2. He was sentenced by the district court[1] to 121 months in prison, and he appeals his conviction and sentence. We affirm.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

During October 2003 Aguilar sold methamphetamine with Kelly LeGrand, Jason Hechtel, and Wade Gwynn. Aguilar resided in a trailer home with LeGrand who received information from Hechtel on November 1, 2003 about a potential buyer. When LeGrand went to meet the buyer that afternoon, he was robbed of his methamphetamine and cash. After the robbery LeGrand summoned Hechtel and Gwynn to his trailer where he and Aguilar blamed Hechtel for the robbery. They demanded $2,000 or sufficient collateral before either Hechtel or Gwynn would be allowed to leave the trailer. Gwynn provided his truck title as collateral and was then permitted to go home, but Hechtel had no collateral to give.

Aguilar and LeGrand forced two tattoos on Hechtel, and LeGrand beat him on Aguilar's orders. Aguilar threatened to blow his head off and made threats against his family although Hechtel did not see a firearm inside the trailer. At one point Aguilar held Hechtel to the floor by stepping on his chest, and he also taunted him by tapping him on the chest with a spear and pointing it under his arm. Eventually Aguilar shaved Hechtel's head and one eyebrow.

The next day Aguilar released Hechtel with instructions to return to the trailer with $2,000, and a few days later Gwynn and Hechtel returned and gave Aguilar the money. After this incident, Hechtel refused to answer calls from LeGrand and Aguilar, but Gwynn continued to sell methamphetamine for LeGrand. On three separate occasions, November 13, 19, and 26, Gwynn received methamphetamine from LeGrand, sold it to an undercover officer, and paid LeGrand with money from the sale. On November 26 the police executed a search warrant at Aguilar's trailer where they recovered approximately 70 grams of methamphetamine and a spear.

Aguilar and LeGrand went to trial together, and the district court denied LeGrand's pretrial motion--in which Aguilar joined--to preclude the government from introducing evidence concerning the alleged kidnaping, beating, and involuntary tattooing of Hechtel. After the jury returned a guilty verdict against each defendant

for conspiring to distribute methamphetamine and possession of methamphetamine with intent to distributte, Aguilar and LeGrand filed motions for judgment of acquittal and for a new trial. The motions were denied.

At Aguilar's resentencing hearing,[2] the district court applied a two level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon in connection with the offense, and another two level enhancement under U.S.S.G. § 3A1.3 for physically restraining a victim in the course of the offense. Aguilar's total adjusted offense level of 30, together with his criminal history category I, resulted in a sentencing range of 97 to 121 months. The district court sentenced him to 121 months in prison on each count, to run concurrently.

On appeal Aguilar argues that the district court erred by admitting irrelevant and prejudicial evidence that he restrained, beat, and tattooed Hechtel in an effort to obtain payment for stolen drugs; by denying his motions for judgment of acquittal and a new trial because the evidence at trial was insufficient to support the verdict; and by applying sentencing enhancements under §§ 2D1.1(b)(1), 3A1.3. In United States v. LeGrand, 468 F.3d 1077, 1080-81 (8th Cir. 2006), cert. denied, 127 S. Ct. 2926 (2007), we dealt with the charges against coconspirator LeGrand and held that the district court had not abused its discretion in admitting evidence that LeGrand and Aguilar beat and tattooed Hechtel since "the probative value of the evidence [was] not substantially outweighed by any prejudicial effect." We also concluded that the court had not abused its discretion in denying the motions for judgment of acquittal and a new trial because "[t]he Government presented more than sufficient evidence" to support the jury's verdict. Id. at 1080-81. Upon careful review, we conclude independently that the evidence that Hechtel was beaten and tattooed was properly

---

[2]Aguilar's original sentence of 78 months in prison was vacated and the case remanded in light of United States v. Booker, 543 U.S. 220 (2005).

admitted and that there was sufficient evidence to support the jury's finding of Aguilar's guilt of the charged offenses.

Aguilar challenges the two level increase of his base offense level pursuant to § 2D1.1(b)(1), arguing that the district court erred in determining that a spear is a dangerous weapon and that Aguilar used the spear in furtherance of the drug conspiracy. Aguilar also argues that his actions to collect the "debt" owed by Hechtel were not related to the drug conspiracy. The government contends that the district court did not clearly err in applying the enhancement. We review a district court's interpretation and application of the guidelines de novo and its factual findings regarding enhancements for clear error. United States v. Jourdain, 433 F.3d 652, 658 (8th Cir.), cert. denied, 126 S. Ct. 2044 (2006).

For the dangerous weapon enhancement in § 2D1.1(b)(1) to apply, "[t]he government has to show by a preponderance of the evidence that a [dangerous weapon] was present and that it was probably connected to the drug offense." United States v. Dillard, 370 F.3d 800, 804 (8th Cir. 2004); U.S.S.G. § 2D1.1 cmt. n. 3 (base offense level should be increased by two levels if dangerous weapon was possessed unless it is clearly improbable that weapon was connected with offense). A "dangerous weapon" is defined as "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1 cmt. n. 1(D); U.S.S.G. § 2D1.1 cmt. n. 3 (referring to § 1B1.1 commentary for definition of "dangerous weapon"). A spear meets this definition. Cf. United States v. Mathijssen, 406 F.3d 496, 499 (8th Cir. 2005) (2 inch knife is dangerous weapon for purposes of § 2D1.1(b)(1)); United States v. Burling, 420 F.3d 745, 750 (8th Cir. 2005) (same for machete).

Hechtel testified at trial that Aguilar accused him of setting up LeGrand for the robbery of his methamphetamine and that Aguilar used the spear to threaten him in an attempt to recover the value of the stolen drugs. We conclude the government carried its burden to support the enhancement because it is not clearly improbable that

the spear was connected to Aguilar's drug conspiracy activities.  See United States v. Guel, 184 F.3d 918, 924 (8th Cir. 1999) (upholding § 2D1.1(b)(1) enhancement, where evidence demonstrated that defendant carried brass knuckles in his coat while attempting to obtain additional drugs and to collect outstanding drug debts).

Aguilar also challenges the district court's two level enhancement for restraining the victim pursuant to § 3A1.3, arguing that there was no evidence that Hechtel was physically restrained in the trailer because he voluntarily entered and was at all times free to leave.  Aguilar contends that the threats of retribution alleged by Hechtel do not fit within the guideline definition of physical restraint.  The government disagrees, arguing that it was the fear instilled by Aguilar that kept Hechtel in the trailer and that the district court's determination was not erroneous.

United States Sentencing Guidelines § 1B1.1 cmt. n. 1(K) defines physical restraint as forcible restraint, "such as being tied, bound, or locked up."  See § 3A1.3 cmt. n. 1 (referring to § 1B1.1 commentary for definition of "physically restrained"); see also Arcoren v. United States, 929 F.2d 1235, 1246 (8th Cir. 1991) (examples of physical restraint in § 1B1.1 cmt. n. 1(K) are not categorical but "merely illustrative examples").  Although Hechtel was at times left unsupervised in the trailer, he was subjected to various forms of physical abuse, including a beating by LeGrand on Aguilar's orders, being held to the floor and threatened with a spear and forcefully tatooed after being told he could not leave the trailer without furnishing collateral for the stolen drugs.  Based on these facts we conclude that the district court did not clearly err in finding that Hechtel was physically restrained.  See United States v. Long Turkey, 342 F.3d 856, 859 (8th Cir. 2003) (applying § 3A1.3 enhancement where defendant held down sexual abuse victim); Arcoren, 929 F.2d at 1246 (defendant's repeated pushing and grabbing of two rape victims to prevent them from leaving bedroom amounted to forcible restraint under § 3A1.3).  To the extent Aguilar argues that the enhancement should not apply because Hechtel was also a coconspirator, his argument is without merit.  See United States v. Kime, 99 F.3d 870,

885-86 (8th Cir. 1996) (coconspirator became victim for purposes of § 3A1.3 when he was beaten and tortured).

Accordingly, we affirm the judgment of the district court.

_____