# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2406

_____

United States of America

*Plaintiff - Appellee*

v.

Steven Leroy Morris

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: February 13, 2015
Filed: July 2, 2015

_____

Before RILEY, Chief Judge, LOKEN and SMITH, Circuit Judges.

_____

LOKEN, Circuit Judge.

Following a bench trial, Steven Morris was convicted of conspiracy to distribute 500 grams of methamphetamine and conspiracy to launder the proceeds of the criminal drug distribution. The presentence investigation report recommended a four-level increase because Morris was an organizer or leader of the criminal drug activity and a two-level increase because a pattern of criminal conduct was his

livelihood. See U.S.S.G. §§ 3B1.1(a), 2D1.1(b)(15)(E). The district court[1] overruled Morris's objections to these enhancements and imposed a sentence of 360 months in prison, the bottom of his advisory guidelines range. Morris appeals, challenging the sufficiency of the evidence to convict and the sentencing enhancements. We affirm.

## I. Sufficiency of the Evidence

**A.** The indictment charged thirty defendants including Morris with conspiring to distribute methamphetamine between January 2009 and March 2012. At trial, Michelle Hendrix, who pleaded guilty to the conspiracy charge, testified that she met Morris in 2009 through Caleb Velvick, another conspirator who was providing Hendrix with methamphetamine for personal use and resale. Hendrix made about six small purchases from Morris during 2009, established a direct relationship with him, and purchased two to four ounces approximately every other day from June to October 2010. After serving a prison term, Hendrix resumed obtaining methamphetamine from Morris between November 2011 and March 2012, when he "fronted" her a half-pound to a pound of methamphetamine per week. Hendrix sold the methamphetamine, delivered the sale proceeds to Morris, and kept notebooks recording her transactions. She identified Morris's house and car from a government photo and recalled that there was a school across the street from his house.

Adrienne Maar testified that she met Morris in December 2010 through her boyfriend, Caleb Velvick's brother Chris, who purchased methamphetamine from Morris at his home for personal use and resale. Initially, Maar waited in Chris's car, but after meeting Morris, she accompanied Chris into Morris's house. Chris purchased approximately one ounce of methamphetamine twice a week from Morris until January 2011, when he began to purchase two to three ounces. On a number of

[1]The Honorable Gregory Kays, Chief Judge, United States District Court for the Western District of Missouri.

occasions, Morris had someone deliver methamphetamine to Chris at his apartment. If Chris had a problem with the methamphetamine, he and the delivery person would call Morris to discuss the problem. Maar identified Morris's house from the government photo and recalled there was a school across the street.

Two other witnesses, Samantha Worley and Craig Sontheimer, testified they accompanied other conspirators to Morris's house. Though neither entered the house nor met Morris, they understood they were there to buy drugs and used methamphetamine upon their return from Morris's house. Both identified Morris's house and recalled there was a school across the street from his house. The district court found these four witnesses credible.

Investigator J.D. Roberts testified that subpoenaed government records showed that Morris had no reported earnings nor IRS filings from 2009 to 2012. On cross examination, Roberts admitted that no member of law enforcement saw Morris with drugs or drug proceeds, no one participated in an undercover buy from Morris, and there was no surveillance evidence or intercepted conversations revealing illegal acts by Morris.

Morris argues the evidence was insufficient to convict him of conspiring to distribute 500 grams of methamphetamine because "this is the rare case where no reasonable person could believe the incriminating testimony" of the government's cooperating witnesses. United States v. Bradley, 643 F.3d 1121, 1125 (8th Cir. 2011) (quotation omitted). Morris emphasizes that the government presented no evidence law enforcement ever observed or found drugs or drug proceeds on Morris or in his home, and that Investigator Roberts admitted another member of the conspiracy said in an interview that another man was dealing drugs using the alias "Stinky." Hendrix had previously testified that "Stinky" was Morris's nickname.

In reviewing the sufficiency of the evidence after a bench trial, we apply the same standard that we apply when reviewing a jury verdict. See United States v. Bowie, 618 F.3d 802, 812 (8th Cir. 2010), cert. denied, 131 S. Ct. 954 (2011). "We review the sufficiency of the evidence . . . in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt, even if the evidence rationally supports two conflicting hypotheses." United States v. Huggans, 650 F.3d 1210, 1222 (8th Cir. 2011) (quotations omitted), cert. denied, 132 S. Ct. 1583 (2012). "[W]e have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses." United States v. Coleman, 525 F.3d 665, 666 (8th Cir.), cert. denied, 555 U.S. 958 (2008).

Viewing the evidence in the light most favorable to the verdict, the testimony of Hendrix and Maar was sufficient to prove that Morris was a knowing and willing member of a conspiracy to distribute more than 500 grams of methamphetamine. "Evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute." United States v. Peeler, 779 F.3d 773, 776 (8th Cir. 2015) (quotation omitted). Hendrix and Maar provided firsthand knowledge of drug sales by Morris at his house, and other witnesses provided corroborating testimony. The district court explicitly found these witnesses credible. "[W]e will not disturb the district court's reasoned credibility determinations." Bowie, 618 F.3d at 814.

**B.** To prove Morris guilty of conspiring to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(ii), the government must prove that Morris knowingly joined an agreement in which the participants "engaged in financial transactions with the knowing use of the proceeds of illegal activities and with the intent to promote the carrying on of unlawful activity." United States v. Hudspeth, 525 F.3d 667, 677 (8th Cir. 2008) (quotation omitted). There was substantial evidence that Morris and other conspirators engaged in financial transactions in which methamphetamine was

purchased, and evidence that Morris purchased a car and remodeled the home at which he sold methamphetamine. Pictures on Morris's Facebook account showed him posing with large bundles of twenty and hundred dollar bills. Morris argues the evidence was insufficient because the investigation by Investigator Roberts did not eliminate the possibility that the large amounts of cash Morris obtained could have been revenues from his legitimate business activities. But on this record, the district court reasonably found that Morris was "converting cash proceeds from drug transactions in furtherance of the drug conspiracy." United States v. Sherman, 262 F.3d 784, 794 (8th Cir. 2001); see United States v. Foxx, 544 F.3d 943, 950 (8th Cir. 2008), cert. denied, 558 U.S. 839 (2009).

## II. Sentencing Issues

**A.** The Guidelines provide for a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). "The terms 'organizer' and 'leader' are to be broadly interpreted. Although an individual in a drug conspiracy must do more than sell drugs for resale in order to be deemed an organizer or leader, he need not directly control his co-conspirators." United States v. Thompson, 210 F.3d 855, 861 (8th Cir. 2000) (quotation omitted), cert. denied, 532 U.S. 996 (2001). "Factors the court should consider include the exercise of decision making authority . . . the recruitment of accomplices . . . the degree of participation in planning or organizing the offense . . . and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.4).

Here, the trial testimony established that, to facilitate distribution, Morris provided methamphetamine to dealers on credit ("fronted" the sales) and recruited others to deliver methamphetamine to dealer Chris Velvick at his apartment. These are facts evidencing an organizer or leader role in the conspiracy. See Thompson, 210 F.3d at 861. Adrienne Maar testified that if Velvick had a problem with the

-5-

methamphetamine, he and the delivery person would call Morris -- further evidence of his decision-making authority in the conspiracy. See United States v. Cooper, 767 F.3d 721, 733 (7th Cir. 2014), cert. denied, 135 S. Ct. 1015 (2015). Testimony by the four cooperating witnesses established that Morris carefully controlled who was allowed in his house when drugs were sold, and that Michelle Hendrix had to establish a personal relationship with him before she could go to the house by herself, further evidence of his controlling role in the conspiracy. See Sherman, 262 F.3d at 793. The district court did not clearly err in finding that Morris was a leader or organizer of the conspiracy.

**B.** The Guidelines provide for a two-level enhancement if the defendant played an aggravating role in the offense, such as organizer or leader, and "committed the offense as part of a pattern of criminal conduct engaged in as a livelihood." U.S.S.G. § 2D1.1(b)(15)(E). Investigator Roberts testified that Morris had no reported income. Other trial evidence established that he was selling large quantities of methamphetamine every week, always paid his rent on time, purchased a car for $13,300 in cash, paid cash for $14,000 worth of repairs and improvements on his home, and purchased several businesses. Morris argues that it was error to impose the aggravating role enhancement; therefore, the two-level criminal livelihood enhancement was improper. On this record, it follows from our conclusion that the district court did not clearly err in imposing the aggravating role enhancement that there was no clear error in also imposing a two level enhancement under § 2D1.1(b)(15)(E).

The judgment of the district court is affirmed.

_____