# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-2197
_____

United States of America

*Plaintiff - Appellee*

v.

Evan Wayne Brown Bull

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: December 20, 2024
Filed: June 2, 2025
_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.
_____

LOKEN, Circuit Judge.

Evan Brown Bull appeals the 400-month sentence the district court[1] imposed after a jury convicted him of conspiracy to distribute 500 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

Brown Bull argues the court erred in overruling his objections to three adjustments that increased his advisory guidelines sentencing range -- a two-level increase under USSG § 3C1.1 for obstructing or impeding the administration of justice, a four-level increase under USSG § 3Bl.l(a) for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," and a two-level increase under USSG § 2D1.1(b)(16)(E) for committing the offense "as part of a pattern of criminal conduct engaged in as a livelihood." "We review a district court's interpretation and application of the guidelines de novo and its factual findings regarding enhancements for clear error." United States v. Aguilar, 512 F.3d 485, 487 (8th Cir.), cert. denied, 555 U.S. 853 (2008). Sentencing judges may find sentence-enhancing facts "by a preponderance of the evidence." United States v. Norwood, 774 F.3d 476, 479 (8th Cir. 2014) (quotation omitted). We affirm.

## I.

At the three-day trial on March 5-7, 2024, thirteen witnesses testified for the government regarding their individual drug dealings with Brown Bull during the 2016-2023 time frame of the alleged conspiracy to distribute methamphetamine in the District of South Dakota and elsewhere. The government also introduced videos of controlled drug sales and Facebook messages memorializing many drug transactions. Brown Bull does not challenge the sufficiency of the evidence supporting his conviction.

The Probation Office filed a draft Presentence Investigation Report ("PSR") on April 19, 2024. The Offense Conduct section, "developed after a review of the discovery information, trial testimony, and interviews with the parties," recorded in sixty-three numbered paragraphs information from thirty-one "sources of information" regarding their drug and firearm dealings with Brown Bull, with his methamphetamine suppliers and customers, and with numerous others involved in purchasing, using, and distributing methamphetamine between 2014 and December

2022. It also included five paragraphs describing controlled purchases from Brown Bull or at his residence, and two paragraphs describing jail messages from Brown Bull regarding the drug conspiracy and trial witnesses.

The draft PSR recommended a base offense level of 32. Adjustments including the § 3Bl.l(a) and § 2D1.1(b)(16)(E) increases at issue on appeal increased the total offense level to 40, and criminal history points placed Brown Bull in category VI, resulting in an advisory guidelines sentencing range of 360 months to life imprisonment. Brown Bull filed seventy-two objections to the draft PSR, denying many of the specific transactions summarized in the PSR and objecting to the § 3Bl.l(a) and § 2D1.1(b)(16)(E) increases because "he was not a leader or organizer of the conspiracy." He also filed a motion for downward variance from the 360 months to life range, arguing a sentence of 180 months "is sufficient."

On June 5, 2024, the Probation Office filed an amended PSR, adding in paragraphs 97 and 105 an adjustment for obstruction of justice because Brown Bull posted on his Facebook page on March 7, the day the trial ended, "THESE ARE THE PEOPLE WHO EXCHANGED MY FREEDOM FOR THEIRS!" followed by a list of individuals who testified. This increased the total offense level in the final PSR to 43 and the advisory guidelines range to life imprisonment. Brown Bull objected to these paragraphs, arguing that "[c]ommenting online about the witnesses in a public trial is First Amendment protected activity" and neither listing names nor his comment "are threats or attempts to intimidate or influence those witnesses." The Probation Officer responded that the post was discovered "after a witness reported fearing for their [sic] safety due to the post" and "it appears the post was an attempt to intimidate or retaliate against the witnesses who testified."

At sentencing, the district court noted that Brown Bull's many objections were to particular PSR paragraphs containing information obtained from proffers or that was not received as trial evidence. This information "does not impact the advisory

-3-

guideline range," so the court "will not rely on the information . . . in determining what the sentence will be." Regarding objections to other paragraphs summarizing the testimony of trial witnesses, the court stated it reviewed the trial testimony, determined the testimony was consistent with each PSR paragraph, and found that the testimony was sufficiently reliable to meet the government's burden of proof by a preponderance of the evidence. The court went on to overrule Brown Bull's specific objections to the three increases at issue on appeal, which we will separately address in Part II of this opinion. Finally, after hearing argument, Brown Bull's allocution, and statements by his supporters, and after considering the 18 U.S.C. § 3553(a) sentencing factors, the court granted in part the motion for downward variance and sentenced Brown Bull to 400 months imprisonment and five years supervised release.

## II.

**A. The Obstruction of Justice Enhancement.** On appeal, Brown Bull first argues the district court erred in applying the two-level increase under USSG § 3C1.1, which provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct . . . increase the offense level by **2** levels.

On February 24, 2024, less than two weeks before the start of trial, Brown Bull contacted an acquaintance via jail "chirp" messages, listing witnesses he believed would testify for the government. He wrote that he had filed a motion to fire his attorney and explained that "all or most they [sic] witnesses are here in [the county jail] now so check the roster. . . . Ima push my trial out make them ship they [sic]

snitches back and forth." He also referred to the "snitches" as "rats" and "f***ers." Two individuals Brown Bull named in the message testified at trial.

On March 7, the last day of trial, Brown Bull caused the names of all the witnesses who testified against him to be posted on his public Facebook page. Listing thirteen names, the post stated, "THESE ARE THE PEOPLE WHO EXCHANGED MY FREEDOM FOR THEIRS!" Comments on the post referred to the witnesses as "rats" and warned "wait til I run into you." The final PSR recommended a two-level increase for willfully obstructing or impeding justice, or attempting to do so, based on Brown Bull's March 7 Facebook post.

At the start of the sentencing hearing, the government called FBI Special Agent Brian Healy, who was present at the entire trial and obtained the two sets of jail chirps. Regarding the pretrial list of witnesses who would testify, Healy testified that Brown Bull filed a motion to "get rid of" his attorney following this chirp, and that Healy recognized the names on the list "as people who provided statements in the underlying case." Regarding the March 7 end-of-trial post, Healy testified that all the people listed testified at trial. Asked if threats were made, Healy testified, "[t]here's some reference to threats against the one that's listed as a paid informant, but those never flushed out as . . . probable to occur."

Asked to address the § 3C1.1 increase, defense counsel argued the March 7 post is protected by the First Amendment -- "It's a public posting of something that happened in a public trial, both public forums," so "that comment on Facebook . . . is not covered conduct" under § 3C1.1. Responding, government counsel argued "it is a reasonably foreseeable harm that outing people who are testifying against a known drug dealer will [result] in threats and possible physical assaults." In addition to the March 7 post, counsel argued that Brown Bull stated in the pretrial chirps "he was going to file the motion just to make the United States have to move these

snitches around. There is an attempt to obstruct justice." The court then denied Brown Bull's objection to the obstruction of justice increase:

> [The pretrial chirp] lists a number of individuals who were called as witnesses. Their names were identified on February 24th of 2024, before the trial began [on] March 5th. They're referred to as rats and f\*\*\*ers. And the defendant makes it clear that they're snitches and that he's . . . try[ing] to put pressure on them, to move them around. All of that is intimidating, or trying to influence a witness . . . or attempting to do so, which falls under Application Note 4.(A) to Section 3C1.1.

On appeal, Brown Bull again argues that the end-of-trial Facebook post is First Amendment protected and "was an update on the progress of his trial," not an attempt to intimidate, threaten, or influence. But as the government argues, this is an attack on the PSR's stated reason for applying the § 3C1.1 increase. It does not respond to the district court's finding, by a preponderance of the evidence, that Brown Bull's pretrial jail chirp listing the names of witnesses who would testify against him and labeling them "snitches" and "rats and f\*\*\*ers" was conduct that intimidated or attempted to influence a witness that falls under § 3C1.1, comment. (n.4.A), conduct also meant to obstruct justice by causing undue expense and delay.

"An enhancement for obstruction of justice is based on findings of fact, which we review for clear error." United States v. Vaca, 289 F.3d 1046, 1049 (8th Cir. 2002). "[A] defendant's attempt to publicize witness names supports an inference that [he] intend[s] to intimidate or threaten them." United States v. Maurstad, 35 F.4th 1139, 1146 (8th Cir. 2022) (citation omitted). Here, we conclude the district court did not commit clear error in finding that Brown Bull's pretrial jail chirps willfully obstructed or attempted to obstruct the prosecution of his criminal case by "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . or attempting to do so." § 3C1.1, comment. (n.4(A)). Therefore, we affirm the denial of Brown Bull's objection to applying this adjustment. Like the district court, we

need not consider whether Brown Bull's end-of-trial Facebook post, standing alone, was conduct to which the § 3C1.1 adjustment applied.

**B. Organizer or Leader and Livelihood Enhancements.** The advisory Guidelines provide for a four-level increase of the offense level if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3Bl.l(a). In addition, § 2D1.1(b)(16)(E) provides for a two-level increase if the defendant "receives an adjustment under § 3B1.1 and . . . (E) the defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood." Pattern of criminal conduct and engaged in as a livelihood "have the meaning given such terms in § 4B1.3." § 2D1.1, comment. (n.20(C)).

**1.** Under § 3B1.1, "[t]he terms 'organizer' and 'leader' are to be broadly interpreted." United States v. Morris, 791 F.3d 910, 914 (8th Cir. 2015) (quotation omitted). Relevant factors for the court to consider include

> the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1, comment. (n.4). "Although an individual in a drug conspiracy must do more than sell drugs for resale in order to be deemed an organizer or leader, he need not directly control his co-conspirators." Morris, 791 F.3d at 914 (quotation omitted). For this enhancement to apply, "the defendant need organize or lead only one other participant." United States v. Willis, 433 F.3d 634, 636 (8th Cir.), cert. denied, 549 U.S. 860 (2006).

A "participant" is "a person who is criminally responsible for the commission of the offense." USSG § 3B1.1, comment. (n.1). This is an inclusive definition:

> The term "offense" encompasses not only the elements and acts cited in the count of conviction, but also all relevant conduct constituting the contours of the underlying scheme itself. . . . An individual does not need to be guilty as a principal in the charged offense in order to be "criminally responsible" for that offense. . . . In addition, an individual need not be indicted or tried in order to be a participant under § 3B1.1.

United States v. Starks, 815 F.3d 438, 441 (8th Cir. 2016) (citations and quotation omitted). "In a drug conspiracy case . . . it is enough if the defendant assumed organizing or leading functions such as recruiting others, determining the price or location of sales, and so forth." Willis, 433 F.3d at 636. "[A] defendant's control over another participant is sufficient but not necessary for a § 3B1.1(b) enhancement." United States v. Moreno, 679 F.3d 1003, 1005 (8th Cir. 2012), citing § 3B1.1, comment. (n.2).

At sentencing, the district court overruled Brown Bull's objection to the four-level § 3B1.l(a) increase:

> [T]he evidence at trial indicated that the defendant was in a very active role in this conspiracy. He controlled the quantity of drugs that other people received. He re-upped [continued to deal with] individuals that were selling on behalf of the conspiracy. He collected unpaid debts. He fronted meth to others. And there were 14 people that testified . . . -- definitely more than five were involved in this conspiracy. So I find that the four-level enhancement was properly applied.

On appeal, Brown Bull correctly notes that "[m]erely distributing or selling drugs is not sufficient for a manager or supervisor enhancement." United States v. Lopez, 431 F.3d 313, 318 (8th Cir. 2005), cert. denied, 547 U.S. 1142 (2006). He argues that

the government offered only two instances at trial where a cooperating witness testified that Brown Bull collected unpaid debts or fronted meth to others; this "is too thin a reed to hang a leader organizer enhancement on." We disagree.

We review the district court's findings regarding enhancements for clear error; "as long as the determination is plausible in light of the record as a whole, clear error does not exist." United States v. Farrington, 499 F.3d 854, 859 (8th Cir. 2007) (quotation omitted), cert. denied, 552 U.S. 1213 (2008). Here, there was trial evidence of Brown Bull directing the aid of underlings. Two government witnesses described how Brown Bull fronted them methamphetamine, and other fronting arrangements were memorialized in Facebook messages the government introduced as evidence. We have held that "fronting, without something more, is not enough to support a § 3B1.1 enhancement." United States v. Del Toro-Aguilera, 138 F.3d 340, 343 (8th Cir. 1998) (quotation omitted). But evidence of fronting tends to refute the notion the defendant is merely participating in a typical buyer-seller relationship; it shows he "retained the financial risk of distribution" and "overstepped a mere seller's role." United States v. Valencia, 829 F.3d 1007, 1013 (8th Cir. 2016) (quotations omitted), cert. denied, 580 U.S. 1103 (2017); see Morris, 791 F.3d at 914.

In addition, Facebook messages introduced at trial and testimony by a conspiracy participant and an FBI investigator described specific examples of Brown Bull's debt collection efforts. A government witness also testified to observing Brown Bull break down a kilogram of methamphetamine into smaller quantities for distribution by other associates. Given these facts evidencing Brown Bull's role in organizing and leading an extensive, multi-year drug distribution organization, the district court did not clearly err in finding that he was an organizer or leader of criminal activity that involved five or more participants and was "otherwise extensive."

**2.** At sentencing, defense counsel advised the court that his objection to the § 2D1.1(b)(16)(E) increase is based on "our position that the evidence at trial did not establish that Mr. Brown Bull was a leader/organizer of this conspiracy." Accordingly, after upholding the § 3B1.1(a) leader/organizer increase, the district court found that the § 2D1.1(b)(16)(E) increase was properly applied because Brown Bull was a leader/organizer, and the PSR found "that this conduct was his source of livelihood from January of 2017 to April of 2023." Brown Bull does not separately contest this increase on appeal. Thus, it requires no additional discussion. See Morris, 791 F.3d at 914-15; cf. United States v. Ford, 987 F.3d 1210, 1215 (8th Cir. 2021).

### III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

_____