# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2081
_____

United States of America

*Plaintiff - Appellee*

v.

Gabriel Aguirre, also known as El Padrino, also known as Moyo Moyo

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: September 15, 2025
Filed: March 23, 2026
_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Gabriel Aguirre pleaded guilty to conspiracy to possess with intent to distribute and to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. In determining the advisory guidelines sentencing range, the Presentence Investigation Report (PSR) recommended a three-level increase because Aguirre was a manager or supervisor of a conspiracy to import methamphetamine from Mexico into the United States, USSG § 3B1.1(b), and a two-level increase because he

committed the offense as part of a pattern of criminal conduct engaged in as a livelihood, § 2D1.1(b)(16)(E). At sentencing, relying on the agreed plea facts and parts of the PSR to which Aguirre had not objected, the district court[1] overruled his objections to these enhancements, agreeing with the government they are broadly construed and apply to Aguirre's conduct in this case. The court determined an advisory guidelines range of 292 to 365 months imprisonment and sentenced Aguirre to 300 months. Aguirre appeals, arguing the district court clearly erred in imposing the enhancements and abused its discretion in imposing a substantively unreasonable sentence. See United States v. Denson, 967 F.3d 699, 706-09 (8th Cir. 2020) (standards of review). We affirm.

## I. Background

The following fact summary is based on portions of the PSR to which Aguirre did not object, or on portions that recited agreed plea facts. Law enforcement identified a drug trafficking operation based in Mexico and operating in central Arkansas that was responsible for importing large quantities of methamphetamine into the United States. In 2017, Aguirre was identified as a U.S.-based leader responsible for coordinating the delivery of methamphetamine to the organization's distributors and customers in Arkansas and elsewhere in the United States. The conspirators collected proceeds from sales in the United States and sent the money to Aguirre in Mexico by electronic transfer in varying amounts and using multiple names to conceal their conduct. Co-defendant Javier Colin-Flores admitted he worked with Aguirre to distribute hundreds of kilograms of methamphetamine in Little Rock and elsewhere in the United States.

---

[1]The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

On October 8, 2017, law enforcement intercepted communications between Aguirre, who lived in Mexico, and Colin-Flores discussing delivery of a methamphetamine shipment to Little Rock. The plan was that Colin-Flores would send a female courier to Texas to pick up the shipment and drive it back to Little Rock on October 9. Aguirre said he would be ready and asked Colin-Flores to send money "down there." Colin-Flores said he would send "at least 20." On October 10, officers intercepted communications between Colin-Flores and drug courier Leyla Acevedo. Acevedo said she had picked up "12." Colin-Flores instructed her to pick up "five more" and return to Little Rock. Colin-Flores then communicated with Aguirre, who said he would not give her "five more." Colin-Flores said they were for someone else; he would send Aguirre more money -- "about ten" -- and would call Aguirre when the methamphetamine arrived in Little Rock.

The drugs never arrived, as law enforcement stopped Acevedo's vehicle and seized 18 kilograms of methamphetamine. Colin-Flores later admitted that he and Aguirre arranged this shipment, that he gave Aguirre contact information for the courier, and that Aguirre contacted Acevedo directly. Phone records seized from Acevedo during her arrest included multiple calls between Acevedo and the number Aguirre used that day, which Colin-Flores confirmed. The PSR held Aguirre accountable for 15-45 kilograms of methamphetamine. It also reported that he appeared to have no other income or assets but claimed to have worked picking fruit and other items when not incarcerated.

The district court overruled Aguirre's objections to the manager/supervisor and criminal livelihood enhancements, noting that both guidelines provisions are "very broad," and imposed a 25-year sentence. Aguirre appeals the enhancement rulings and the substantive reasonableness of the sentence.

## II. The Sentence Enhancements

When an appeal challenges a sentencing enhancement, we review the district court's findings regarding the enhancement for clear error. United States v. Brown Bull, 138 F.4th 1083, 1090 (8th Cir. 2025) (citation omitted). "[A]s long as the determination is plausible in light of the record as a whole, clear error does not exist." United States v. Farrington, 499 F.3d 854, 859 (8th Cir. 2007) (quotation omitted), cert denied, 552 U.S. 1213 (2008). Sentencing judges "are required to find sentence-enhancing facts only by a preponderance of the evidence." United States v. Sorensen, 148 F.4th 992, 998 (8th Cir. 2025) (quotation omitted).

**A. Manager or Supervisor.** USSG § 3B1.1(b) provides for a three-level increase if the defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive. "We construe the terms 'manager' and 'supervisor' broadly." United States v. Reyes-Ramirez, 916 F.3d 1146, 1148 (8th Cir. 2019) (citation omitted). The three-level enhancement may apply "even if the management activity was limited to a single transaction." United States v. Munoz, 134 F.4th 539, 545 (8th Cir.) (quotation omitted), cert denied, 146 S. Ct. 231 (2025). In determining if it applies, the court looks to factors such as "the exercise of decision-making authority, the nature of participation in the commission of the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." United States v. Ellis, 129 F.4th 1075, 1080 (8th Cir.) (cleaned up), cert denied, 146 S. Ct. 252 (2025).

At sentencing, Aguirre's attorney argued:

> We do not deny that he took money in exchange for arranging meth to be delivered. That makes him a criminal, your Honor, which is why he pled guilty. It does not make him a leader of an organization . . . .

The district court responded:

> Mr. Aguirre is not a leader, but I do believe he qualifies at least as a manager. Probably as a supervisor, given his involvement in coordinating the details of the deliveries. . . . I understand your argument . . . it is a way to look at the facts. I just don't believe that the applicable precedent supports that look at the facts.

We agree. Aguirre coordinated the importation of hundreds of kilograms of methamphetamine into the United States for over five years. Like the defendant in Reyes-Ramirez, he was the "key link" between the conspiracy's source of supply in Mexico and its distributors in Arkansas. 916 F.3d at 1148 (quotation omitted). In the early October 2017 transaction, he and Colin-Flores coordinated an 18-kilogram shipment of methamphetamine from Mexico into Little Rock. Evidence that a participant "supervised the conspiracy's deliveries and payments [in one city] . . . may warrant enhancement." United States v. Moreno, 679 F.3d 1003, 1005 (8th Cir. 2012) (cleaned up). Aguirre communicated directly with courier Acevedo, exercising his authority when he refused her request to supply additional methamphetamine until Colin-Flores assured Aguirre the request was on behalf of the organization and Aguirre would be paid.

Aguirre nonetheless argues the record does not contain sufficient evidence he was a manager or supervisor, relying on United States v. Adejumo, 772 F.3d 513 (8th Cir. 2014), cert denied, 580 U.S. 1191 (2017). But in Adejumo, a multi-defendant fraud, identity theft, and money laundering case, we concluded there was insufficient evidence that one defendant had "directed or procured the aid of" at least one other participant, as "we have always required." Id. at 532-33. Here, there is undisputed evidence that Aguirre, serving as the key link in importing vast quantities of methamphetamine into the United States over a long period of time, managed and

supervised at least minor participants such as courier Acevedo.  The district court did not clearly error in applying the three-level role enhancement under § 3B1.1(b).[2]

**B. Criminal Conduct Engaged in as a Livelihood.**  USSG § 2D1.1(b)(16)(E) calls for a two-level enhancement if the defendant receives an aggravating role adjustment under § 3B1.1 and "committed the offense as part of a pattern of criminal conduct engaged in as a livelihood."  For the enhancement to apply, the evidence must establish that, in a 12-month period, (1) the defendant received an income from the criminal activity that was 2,000 times the hourly federal minimum wage, and (2) the criminal activity was the defendant's primary occupation.  United States v. Ford, 987 F.3d 1210, 1215 (8th Cir. 2021); see USSG § 4B1.3 comment. (n.2), defining "Engaged in as a livelihood."

In overruling Aguirre's objection, the district court found that "the information [in the record] as a whole indicates to me that moving this methamphetamine was his main business and livelihood. Yes he is an addict and was supplying his own habit, but I think this was his occupation as well."

On appeal, Aguirre argues the government did not meet its burden of proof because no evidence in the record shows that his illicit income surpassed the applicable threshold.  In the district court, Aguirre argued he should not receive the enhancement because he was a mere user and was not getting rich off the drug trade, not that the government did not meet its burden in satisfying the first prong of the governing test in Ford.  Because he did not raise this issue below, our review is limited to plain error.  United States v. Soto, 62 F.4th 430, 434 (8th Cir. 2023).  To succeed on plain error review, Aguirre must show: "(1) error, (2) that is plain, (3) that affects his substantial rights, and (4) that seriously affects the fairness, integrity, or

---

[2]Because we conclude Aguirre is manager or supervisor, he is ineligible for safety-valve relief.  See 18 U.S.C. § 3553(f)(4).

public reputation of judicial proceedings." United States v. Pirani, 406 F.3d 543, 550 (8th Cir.) (en banc) (cleaned up), cert denied, 546 U.S. 909 (2005).

At the time of Aguirre's offense, the hourly minimum wage was $7.25. See 29 U.S.C. § 206(a)(1)(C). "Accordingly, the government needed to show that [Aguirre] derived more than $14,500 in income from his drug activity to prove the enhancement applied." United States v. Berry, 930 F.3d 997, 999 (8th Cir. 2019).

In determining whether the government met this burden, the district court is "entitled to draw reasonable inferences" from the record. United States v. McArthur, 11 F.4th 655, 663 (8th Cir. 2021). Accordingly, we have routinely upheld the enhancement in cases where circumstantial evidence established a reasonable inference that the defendant's illegal earnings satisfy the threshold. In Berry, we held there was no *clear* error when the district court found that the defendant "wired $22,000 for drugs in a single year, that he had no significant legitimate employment, and that evidence suggested he had other large amounts of cash on hand." 930 F.3d at 1000. Similarly, in Denson, we affirmed the district court's findings that the enhancement applied in part because the total street value of the drugs seized from the defendant and used in his numerous transactions surpassed $100,000. 967 F.3d at 707.

Here, Aguirre did not dispute that he moved hundreds of kilograms of methamphetamine into the United States over the course of five years. The record supports the common knowledge of those involved in drug trafficking cases -- methamphetamine trafficking is a lucrative business. For example, in the attempted transaction in which courier Acevedo was to bring a shipment to Little Rock in October 2017, Aguirre and Colin-Flores discussed sending "20" and "about ten" to Aguirre in Mexico, obviously meaning between $20,000 and $30,000, before law enforcement seized 18 kilograms of methamphetamine in Acevedo's vehicle on its way to Little Rock. The district court could reasonably infer that Aguirre was paid

-7-

more than $14,500 a year for coordinating the deliveries of hundreds of kilograms of this costly contraband into the United States over the course of five years. There was no plain error in finding that the government's evidence satisfied this minimum income requirement, and no error in finding that this criminal activity was Aguirre's livelihood, as he had little if any other apparent source of income during these years. The court did not commit plain error in imposing the two-level enhancement.

### III. Substantive Reasonableness

Aguirre argues that his sentence is substantively unreasonable because 300 months imprisonment is significantly higher than the guidelines range. This argument assumes we will agree with his appeal of the sentence enhancements because, if they are properly applied, as we have now concluded, the 300-month sentence is within the applicable guidelines range of 292-365 months.

"We review the substantive reasonableness of a sentence for abuse of discretion." United States v. Rexrode, 149 F.4th 977, 981 (8th Cir. 2025) (quotation omitted). At sentencing, the district court heard about Aguirre's background, listened to his allocution that emphasized remorse, and extensively explored the § 3553(a) sentencing factors. The court acknowledged that Aguirre's upbringing and background weighed in favor of a lesser sentence but ultimately determined that moving a high volume of drugs into the United States for a significant period of time warranted a sentence of 25 years. The court carefully explained its reasons for the sentence it imposed:

> "I believe him to be a manager, and a key one, a volume distributor, as it were, who has the ability to get his hands on lots of drugs and move them into the United States. And so the sentence has to be a serious one both to punish and deter . . . . At the same time, I'm required to and I'm doing my best to . . . fairly account for your

upbringing and your difficult circumstances . . . .  [M]y mind comes to rest on a sentence . . . [of] 25 years."

We conclude this is not the "unusual case when we reverse a district court sentence -- whether within, above, or below the applicable guidelines range -- as substantively unreasonable." United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quotation omitted).  The court weighed the relevant sentencing factors, carefully balancing the aggravating circumstances of the offense conduct and mitigating factors that suggested a lower sentence near the bottom of the guidelines range.  "Simply because the district court weighed relevant factors more heavily than [Aguirre] would prefer does not mean the district court abused its discretion." United States v. Maluoth, 121 F.4th 1158, 1165 (8th Cir. 2024) (cleaned up).

For the foregoing reasons, the judgment of the district court is affirmed.
_____